CHARLES R. BALDWIN v. CAPITOL STEAM LAUNDRY COMPANY.[1]

July 30, 1909.

Nos. 16,209—(188).

**Malicious Prosecution.**

When a full and fair disclosure of all the facts is made to the county attorney, and a criminal complaint is then filed upon his advice, an action for malicious prosecution will not lie.

**Same — Probable Cause.**

When the facts are not controverted, the question of probable cause is one of law.

Action in the district court for Ramsey county to recover $10,000 damages for false imprisonment. The case was tried before Olin B. Lewis, J., and a jury which rendered a verdict in favor of plaintiff for $850. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed and new trial granted.

*P. J. McLaughlin,* for appellant.
*Morton Barrows,* for respondent.

ELLIOTT, J.

In this action for damages the plaintiff, Baldwin, recovered a verdict for $850, and the defendant appealed from an order denying its motion for judgment or for a new trial.

There was some controversy as to whether or not the complaint states a cause of action for false imprisonment or for malicious prosecution, and the submission of the case on the theory that the action is for malicious prosecution is assigned as error. If the action was for false imprisonment only, it is clear that the defendant was entitled to a directed verdict. We proceed, however, to consider the case upon the theory that the court was right in ruling that the complaint states an action for malicious prosecution.

Prior to April, 1907, the plaintiff was in the employ of the de-

[1]Reported in 122 N. W. 460.

fendant under a contract which required him to deliver laundry bundles and make collections therefor. A controversy arose as to whether or not he had turned over all the moneys collected. He was discharged, and thereafter, upon the complaint of the treasurer and manager of the defendant company, a criminal complaint was made against him in the municipal court of the city of St. Paul, charging him with the larceny of a certain amount of money, exceeding $50. The complaint was sworn to by John Keefe, treasurer and manager of the defendant company, and was filed or caused to be filed by the county attorney with the clerk of the court. A warrant was thereupon issued in due form out of, and under the seal of, the court. Under this warrant the plaintiff was arrested, and after a hearing before the municipal court was bound over to appear before the grand jury. Bail was fixed at one hundred dollars, and in default thereof the plaintiff was committed to the county jail, where he remained for twenty-six days. The grand jury reported no bill, and the plaintiff was discharged from custody. Thereafter this action was commenced.

Upon the trial the defendant attempted to prove that the plaintiff was in fact guilty of larceny, and almost the entire record is devoted to testimony upon that issue. It is reasonably clear to us, from the examination we have been able to make of the accounts, that after giving the plaintiff credit for all he demanded he was still short in his accounts. But we do not determine the appeal upon that issue.

The complaint was made by Mr. Keefe, treasurer and manager of the appellant company. It appears beyond question that he placed the books of account in the hands of the county attorney, and made a full and fair disclosure of all the facts with reference to the matter to him. At the request of the county attorney, Mr. Keefe brought his books and records to the county attorney's office, and they were subjected to examination by the county attorney. The consultation lasted some two or three hours, and thereafter the county attorney prepared the complaint and had Mr. Keefe sign and swear to it. We find nothing in the record which suggests that Mr. Keefe overstated anything to the county attorney, or that he did not fully and truly

state all the facts within his knowledge, or which he had reason to believe existed. On cross-examination Mr. Keefe testified as follows:

"Q. Now, did the county attorney accept your statement as to this amount of shortage, or did he himself go through the books, to balance Mr. Baldwin's accounts and himself determine the amount he was short on the books? A. He went through the books. Q. Made a careful examination? A. Yes; took quite a while. Q. Yes, and drew his own conclusions from them. That is true, is it? A. Yes, sir; yes, sir. Q. Now, this conversation to which you have testified, and which you are testifying about now, was had with whom? A. Mr. Ryan (assistant county attorney). Q. And he is the one on whose advice you acted? A. Yes, sir. Q. He is the one who you say examined the records and arrived at his own result? A. Yes, sir. Q. And conclusion? A. Yes, sir. Q. About how long was Mr. Ryan in making his examination of the books and reaching his own conclusions as to the amount of Mr. Baldwin's shortage? A. I should judge two or three hours. I know I was up there about that time, anyhow."

This testimony is not challenged. Upon the issue as to the actual condition of Baldwin's accounts the books were not conclusive evidence; but we find nothing in the record which tends to show that Mr. Keefe did not at the time believe that Baldwin had appropriated the money. The question is not whether Baldwin was in fact guilty, but whether Keefe at the time had reasonable cause to believe that he was guilty. It appears that he placed all the evidence in his possession before the county attorney and that he made a full and fair disclosure of the facts. The facts not being in dispute, the question of probable cause was for the court, and not for the jury, to determine. Moore v. Northern Pac. R. Co., 37 Minn. 147, 33 N. W. 334; Gilbertson v. Fuller, 40 Minn. 413, 42 N. W. 203; Genevey v. Edwards, 55 Minn. 88, 56 N. W. 578; Shea v. Cloquet Lumber Co., 92 Minn. 348, 100 N. W. 111.

The order of the trial court is reversed, and the case remanded, with directions to enter judgment for the defendant.

LEWIS, J. (dissenting).

I dissent. Mr. Baldwin, as driver, was charged with all laundry accounts upon his route, and it was his duty to turn into the office all cash received, and to return bundles when cash was not received. He was allowed a commission on all business in excess of a certain amount; but the system of bookkeeping was imperfect, and there were many uncertainties and contingencies growing out of the fact that disputes arose with customers over the amount due, and lost or damaged articles. There was a substantial controversy between Mr. Baldwin and Mr. Keefe, as manager of the laundry, over the amount that had been collected, on account of which Baldwin was discharged, and on the following day he was arrested and put into jail on the charge of embezzlement.

At the close of the trial defendant's attorney moved the court to direct a verdict for defendant upon the ground, among others, that it conclusively appeared from the evidence that plaintiff did not pay over all of the money collected in the course of his employment, and that it conclusively appeared from the evidence that after a full and fair statement of all the facts in the case, and the books and records upon which the accounts were contained, the county attorney advised that the offense complained of had been committed, and that Keefe had acted in good faith and relied on such advice in procuring Baldwin's arrest. The court denied the motion, and charged the jury that the question of the actual and true state of accounts was material, as bearing upon the question whether Keefe had probable cause to believe that plaintiff was guilty of wrongfully taking money from the defendant at the time Keefe commenced the prosecution in the municipal court, and upon the question of the advice of counsel that it was the law that a prosecution commenced in good faith upon the advice of competent counsel, obtained after a full and exact statement of all the material facts known to the prosecutor and which he had reason to believe existed, was a complete defense, and the court left it to the jury to determine whether or not Keefe had stated to the county attorney all the facts bearing upon the guilt or innocence of the plaintiff, or which, in the exercise of reasonable diligence, he

should have known, and whether he acted in good faith on the advice of the attorney in initiating the prosecution.

In my opinion, the court was correct in submitting this question to the jury. Under proper instructions the jury found that Baldwin was not indebted to the laundry in any amount, and the contradictory statements and claims of Mr. Keefe as to the amount due and the indefinite method of keeping the accounts made the good faith of Keefe in causing Baldwin's arrest a question for the jury. It does not satisfactorily appear, to my mind, that Keefe presented all the facts to the county attorney and in good faith relied upon the advice given him as a result of the investigation.

I discover no other errors in the case, and am of opinion that the order appealed from should be affirmed.

BROWN, J.

I concur in the views of Mr. Justice Lewis.

On August 11, 1909, the following opinion was filed:

PER CURIAM.

Having duly considered the respondent's petition for a reargument of this cause, it is ordered that the petition be and it is hereby denied; but upon a further consideration of the evidence the court is of the opinion that it is not so conclusive in defendant's favor as to entitle it to judgment notwithstanding the verdict. Therefore it is ordered that the order remanding the cause be and it is hereby amended so as to read as follows:

Ordered that the order appealed from be and it is hereby reversed, and a new trial granted.